FILED

# UNITED STATES DISTRICT COURT
## UNITED STATES MIDDLE DISTRICT OF FLORIDA

2010 APR 16  AM 11: 32

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA

CASE NUMBER:

WALTER TAMAGNI,
DENISE PERRY,
RICHARD TOMPKINS,
CARRIE WOHLERS,
DAWN EATON AND
THOMAS SHERRY                              )
                                           )
                                           )
       Plaintiffs,                         )
                                           )
vs.                                        )
                                           )
ORION BANCORP, INC.,         2:10 -cv -228 -FtM-29-SPC
ORION BANCORP, INC.
EMPLOYEE STOCK OWNERSHIP
PLAN, ORION BANCORP, INC.
EMPLOYEE STOCK
OWNERSHIP TRUST,
JERRY J. WILLIAMS,
ALAN PRATT, EARL P. HOLLAND,
JAMES W. AULTMAN, JAMES J. TOROK,
BRIAN C. SCHMITT, DAVID J. SWEENEY,
WILLIAM E. MEYERS, and
LORI K. ARNOLD                             )
                                           )
       Defendants.                         )
_____ )

## COMPLAINT

NOW INTO COURT, through undersigned counsel, do come and appear Plaintiffs,

WALTER TAMAGNI, DENISE PERRY, RICHARD TOMPKINS, CARRIE WOHLERS, DAWN

EATON AND THOMAS SHERRY (collectively, "Plaintiffs"), who, in support of this Complaint

against Defendants, ORION BANCORP, INC., ORION BANCORP, INC. EMPLOYEE STOCK

OWNERSHIP PLAN (with 401(k) (Provisions), ORION BANCORP, INC. EMPLOYEE STOCK

OWNERSHIP TRUST, JERRY J. WILLIAMS ("Williams"), ALAN PRATT,   EARL P.

HOLLAND, JAMES W. AULTMAN, JAMES J. TOROK, BRIAN C. SCHMITT, DAVID J. SWEENEY, WILLIAM E. MEYERS ("Meyers"), and LORI K. ARNOLD (collectively, "Defendants"), show the Court as follows:

## I.    Background

1.       Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 et seq., was enacted, in part, to ensure "the soundness and stability of plans with respect to adequate funds to pay promised benefits." ERISA §2(a), 29 U.S.C. § 1001 (a). In order to protect pension investments, ERISA requires that those who manage plan investments act with loyalty to the interests of plan participants; with care, skill, prudence and diligence; in a manner that diversifies the investments of the plan so as to minimize large losses; and in accordance with plan documents. See ERISA §§404 (a) (1) (A), (B), (C) & (D), 29 U.S.C. §§1104 (a) (1), (A), (B), (C) & (D).

2.       When ERISA's strict fiduciary standards are not met, a plan participant or beneficiary may seek relief under ERISA §§ 409 and 502 (a) (1), (2) & (3), 29 U.S.C. §§ 1109 and 1132 (a) (1), (2) & (3), to redress violations and restore plan losses.

3.       On Friday, November 13th 2009, Orion Bank, Naples, Florida, wholly owned by Orion Bancorp, Inc., ("Bancorp") was closed by the Florida Office of Financial Regulation ("OFR"), and the Federal Deposit Insurance Corporation ("FDIC") was named as receiver. All deposits, excluding certain brokered deposits, were transferred to IBERIABANK, Lafayette, Louisiana, and Orion Bank ceased all operations. As a result, the value of Bancorp stock was reduced to zero, as Orion bank was Bancorp's primary asset.

4.      At the time of Orion Bank's failure, one of the largest single investors in Bancorp stock was the Orion Bancorp, Inc., Employees Stock Ownership Plan (with 401 (k) Provisions) (the "Plan").

5.      The Plan was a defined contribution pension plan that was designed to provide retirement benefits to Orion Bank's employees, retirees, and their beneficiaries.

6.      The Trustees of the Plan were Williams, Meyers, and Lori K. Arnold. In addition to being a Trustee of the Plan, Williams was the President, Chief Executive Officer, and Chairman of the Board of Bancorp as well as the President , Chief Executive Officer, and Chairman of the Board of Orion Bank. In addition to being a Trustee of the Plan, Meyers was a member of the Board of Directors of Bancorp until 2006.

7.      Under the Plan, participants could contribute up to fifteen percent (15%) of their eligible base pay to the Plan and allocate contributions to an Equity Fund, consisting of Bancorp stock, or a General Investment Fund, represented in the Participants' Handbook as a "diversified portfolio intended to guarantee safety of principal and a consistent return". In written materials and personal communications, however, the Trustees of the Plan encouraged employees to invest their personal contributions in Bancorp stock. The Plan provided that contributions from Bancorp, which could be optional contributions by the company or matching contributions, would be invested "primarily" in Bancorp stock. In practice, however, the Bancorp contributions were invested solely in Bancorp stock.  As a result, the vast majority, exceeding ninety percent (90%) of the Plaintiff's retirement accounts consisted of Bancorp stock. Thus, the Trustees failed to diversify the investments of the Plan so as to minimize the risk of large losses, despite knowledge that Bancorp stock was in danger of being valueless due to investigations and enforcement activities by the various agencies highlighting the fact that the Bank was severely undercapitalized and in risk of imminent failure.

8.     Various reports were issued by the Plan reflecting an official valuation of Bancorp stock, which was the primary if not sole asset of the Plan. In a report issued by the Plan on September 30, 2007, Bancorp stock was valued at $48.00 per share. In a report issued by the Plan of December 31, 2007, Bancorp stock was valued at $55.00 per share, despite the fact that investigations by regulatory authorities during 2007 that revealed serious problems with the Bank. In a report issued March 31, 2008, Bancorp stock was again valued at $55.00 per share, despite ongoing regulatory investigations and actions during this period of time. In a report issued December 30, 2008, Bancorp stock was valued at $32.00 per share, despite ongoing regulatory investigations and actions during this period of time. In a report issued June 30, 2009, the Plan's assets consisted almost entirely of Bancorp stock that was officially valued by the Plan at $32.00 per share, despite ongoing regulatory investigations and actions during this period of time. By year end 2009, with the Bank seized by the FDIC and its assets sold, however, Bancorp stock had no value whatsoever.

9.     As Bancorp stock lost all value between 2007 and year end 2009, during which time the Plan's fiduciaries were fully aware of investigations and enforcement actions against Orion Bank (Bancorp's primary asset) by the Federal Reserve Bank of Atlanta (the "Reserve Bank") the Board of Governors of the Federal Reserve (the "Federal Reserve") and the OFR, the Plan's fiduciaries never considered the prudence of the Plan's investment in Bancorp stock, or took any action whatsoever to protect the value of the participants' retirement accounts. As a result of the fiduciaries' total and complete inaction, the Bancorp stock held by the Plan lost all of its value and the participants lost almost all value in their retirement accounts and are now left with an uncertain financial future.

10.    At all relevant times, the Plan was managed by three distinct sets of fiduciaries: (1) the Trustees of the Plan, Jerry J. Williams, William E. Meyers, and Lori K. Arnold, who were charged

with the prudent investment of the assets of the Plan; (2) Bancorp and its Board of Directors who were responsible for appointing and overseeing a Trustee to manage the Plan's investments; and (3) those professionals engaged by the Board of Directors and/or the Trustees of the Plan to provide professional advice to the Board of Directors and/or the Trustees regarding the Plan, who shall be named as defendants herein following discovery.

11.     Because none of these fiduciaries complied with their obligations under ERISA, they are (or following discovery shall be) named as defendants herein and are jointly and severally liable for the losses they have caused to the Plaintiffs' Plan accounts.

12.     In particular, the Trustees never effectively monitored, reviewed, analyzed, questioned, altered, slowed, or stopped the Plan's investment in Bancorp stock, even in light of the investigations and enforcement activities of the Reserve Bank, the Federal Reserve and the OFR. Without ever considering the prudence of the Plan's investment in Bancorp stock, the Trustees expended all of Bancorp's matching contributions on Bancorp stock, and retained and actively promoted Bancorp stock as an investment option for the participants' personal contributions to the Plan.

13.     Bancorp and its Board of Directors were responsible for appointing and overseeing the Trustees, and consequently, had fiduciary responsibilities for the Plan. Nevertheless, the Board of Directors never monitored the Trustees' performance of their duties and responsibilities, never advised the Trustees to take prudent action to protect the Plan's assets even in the face of critical adverse information known to them, about Bancorp's deteriorating financial condition, and never sought to remove the Trustees for failing to discharge their obligations at any time prior to the failure of Orion Bank although they were aware of the investigations and enforcement activities by the

/

Reserve Bank, the Federal Reserve, and the OFR, as well as other information, that foreshadowed that failure.

### a. Jurisdiction and Venue

14.    This action arises under ERISA and is brought by the Plaintiffs, each of whom are Plan participants, to obtain relief pursuant to ERISA §§ 409 and 502 (a) (1), (2) and (3), 29 U.S.C. §§ 1109 and 1132 (a) (1), (2) and (3), to redress violations and restore Plan losses. Thus, this Honorable Court has jurisdiction over this action pursuant to ERISA § 502 (e) (1), 29 U.S.C. §1132 (e) (1).

15.    Venue with respect to this action lies in the Middle District of Florida pursuant to ERISA §502 (e) (2), 29, U.S.C. § 1132 (e) (2) as the Plan was administered in Naples, Florida, and at least one of the Defendants resides within the Middle District.

### b. Parties

16.    Plaintiff, Walter Tamagni, is a resident of North Carolina of the full age of majority and the capacity to file suit, and is, and was at all times relevant hereto, a Plan participant and a proper party plaintiff.

17.    Plaintiff, Denise Perry, is a resident of Florida of the full age of majority and the capacity to file suit, and is, and was at all times relevant hereto, a Plan participant and a proper party plaintiff.

18.    Plaintiff, Richard Tompkins, is a resident of Florida of the full age of majority and the capacity to file suit, and is, and was at all times relevant hereto, a Plan participant and a proper party plaintiff.

19.    Plaintiff, Carrie Wohlers, is a resident of Florida of the full age of majority and the capacity to file suit, and is, and was at all times relevant hereto, a Plan participant and a proper party plaintiff.

20.     Plaintiff, Dawn Eaton, is a resident of Kansas of the full age of majority and the capacity to file suit, and is, and was at all times relevant hereto, a Plan participant and a proper party plaintiff.

21.     Plaintiff, Thomas Sherry, is a resident of Pennsylvania of the full age of majority and the capacity to file suit, and is, and was at all times relevant hereto, a Plan participant and a proper party plaintiff.

22.     The Plan is an employee pension benefit plan as defined in ERISA §3 (2), 29 U.S.C. § 1002 (2), sponsored by Bancorp. The Plan was not designed to comply with the provisions of ERISA § 404 (c), 29 U.S.C. § 1104 (c), or its related regulations (29 CFR § 2550.404c-1) and the Plan as administered did not comply with those provisions. The Plan is named as a Defendant herein pursuant to Rule 19(a) of the Federal Rules of Civil Procedure solely to ensure that complete relief can be granted.

23.     Orion Bancorp, Inc. Employee Stock Ownership Trust (the "Trust") is a trust established by Bancorp and its Board of Directors to administer the Plan and make investment decisions regarding the Plan assets. As the entity to which Bancorp and its Board of Directors delegated responsibility for the administration of the Plan and the decisions regarding the Plan assets, the Trust is fiduciary pursuant to ERISA §3 (21), 29 U.S.C. § 1002 (21), and is named herein pursuant to Rule 19(a) of the Federal Rules of Civil Procedure solely to ensure that complete relief can be granted.

24.     Bancorp is a Florida corporation with its principal place of business located at 2150 Goodlette Road North, Naples, Florida 34102. Bancorp is the "plan sponsor" of the Plan pursuant to ERISA § 3 (16) (B), 29 U.S.C. § 1002 (16) (B). Further, as the entity responsible for selecting, monitoring and removing fiduciaries of the Plan and as the "administrator" of the Plan within the

meaning of ERISA § 3 (16) (A), 29 U.S.C. § 1102 (16) (A), Bancorp is a fiduciary of the Plan pursuant to ERISA § 3 (21), 29 U.S.C. § 1002 (21).

25.     Williams, Meyers, and Lori K. Arnold were Trustees of the Plan (also hereinafter referred to as the "Trustee Defendants"). The Trustee Defendants were designated by the Plan as the "named fiduciary" of the Plan and the "administrator" of the Plan pursuant to ERISA § 3 (16) (A), 29 U.S.C. § 1002 (16) (A). See Section 18 of the Plan. As such, the Trustee Defendants were fiduciaries of the Plan pursuant to ERISA § 3 (21), 29 U.S.C. §1002 (21).

26.     Bancorp's Board of Directors included officers Williams, Meyers (until his resignation during 2006) and David J. Sweeney, as well as non officers Alan Pratt, Earl P. Holland, James W. Aultman, Brian C. Schmitt, and James J. Torok. Because they were responsible for selecting, monitoring and removing the Plan's Trustees, the members of the Board of Directors are fiduciaries of the Plan pursuant to ERISA § 3 (21), 29 U.S.C. § 1002 (21).

### c. Responsibility for Overseeing the Plan:

### i. Trustee Defendants

27.     As the named fiduciary for the Plan, the Trustee Defendants had full authority to control and manage the Plan.   See ERISA § 402 (a) (1) (A), 29 U.S.C. §1002 (a) (1). As the fiduciaries, the Trustee Defendants were required by ERISA §§ 404 (a) (1) (A) & (B), 29 U.S.C. §§ 1104 (a) (1) (A) & (B) to manage and oversee the Plan's investments in Bancorp stock solely in the interests of the Plan's participants and beneficiaries with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character with like aims.

28.     The documents governing the Plan also spelled out specific duties and responsibilities which

the Trustee Defendants had relating to the Plan's investments in Bancorp stock, including the duty to

"hold, invest, reinvest, manage, administer and distribute the Trust Assets, as provide herein and

under the Plan, for the exclusive benefit of Participants (and their Beneficiaries)". Bancorp, Inc.

Employee Stock Ownership Trust Agreement, Section A.   The Plan further provided that the

"Trustee shall be the named fiduciary with authority and responsibility for the management and

investment of the Trust Assets. . . .The Trustee shall establish a funding policy and method for

acquiring Bank Stock for the Trust in a manner that is consistent with the objectives of the Plan and

the requirements of ERISA". Plan, Section 18. The Plan also gave the Trustee Defendants the ability

to invest the Trust Assets in any prudent investment, not just Bank Stock. Plan, Section 5(a).

29.     ERISA required the Trustee Defendants to: "Discharge [their] duties with respect to a plan

solely in the interest of the participants and beneficiaries and-

        (A) for the exclusive purpose of:

                (i) providing benefits to participants and their beneficiaries; and

                (ii) defraying reasonable expenses of administering the plan;

        (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that

a prudent  man acting in a like capacity and familiar with such matters would use in the conduct of

an enterprise of a like character and like aims; and . . . .

        (D) in accordance with the documents and instruments governing the plan insofar as

        such documents and instruments are consistent with the provisions of this  subchapter and

subchapter III of this chapter. ERISA §§ 404 (a) (1) (A), (B), & (D), 29 U.S.C. §§ 1104 (a) (1) (A),

(B), & (D).

### ii. The Board of Directors

30.     The Board of Directors was solely responsible for selecting, directing and removing the Plans' Trustees. Plan, Section 18.  Bancorp, Inc. Employee Stock Ownership Trust Agreement, Section M. Accordingly, the members of the Board of Directors were fiduciaries of the Plan pursuant to ERISA § 3 (21), 29 U.S.C. § 1002 (21), and subject to ERISA's duties of loyalty and prudence. ERISA §§ 404 (a) (1) (A) & (B), 29 U.S.C. §§1104 (a) (1) (A) & (B).

31.     ERISA required the Board of Directors to: "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries and-

   (A) for the exclusive purpose of:

      (i) providing benefits to participants and their beneficiaries; and

      (ii) defraying reasonable expenses of administering the plan;

   (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent  man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; and . . . .

   (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter. ERISA §§ 404 (a) (1) (A), (B), & (D), 29 U.S.C. §§ 1104 (a) (1) (A), (B), & (D)."

### II. Factual Allegations

32.     Orion Back was Bancorp's primary asset. The value of Bancorp stock in the Plan depended directly upon the financial soundness of Orion Bank.

33.    According to published statements attributed to Williams, President, Chief Executive Officer

and Chairman of the Board of Bancorp and President, Chief Executive Officer and Chairman of the

Board of Orion Bank, an economic decline in Florida began in January of 2006. Williams was also a

Trustee for the Plan, and is a Trustee Defendant herein as well as defendant with regard to the

actions (and failures to act) of the Board of Directors.

34.    According to published reports, financial problems at Orion Bank were uncovered during an

examination by the Reserve Bank that took place during October, 2007. During this period of time,

the Trust issued reports that Bancorp stock had a value of $55.00 per share.

35.    According to documentation issued by the Reserve Bank, a subsequent examination was

conducted and an official report detailing financial problems at Orion Bank was conveyed to Orion

Bank on July 2, 2008.

36.    On August 25, 2008, Bancorp and Orion bank entered in to a Written Agreement with the

Reserve Bank and the OFR. This Written Agreement detailed financial problems of Bancorp and

Orion Bank, and required reforms to take place. Following the issuance of the Written Agreement,

Williams made the following statement to the Naples News: "Who is the Board? That's me. I'm

responsible and I'm paying close attention." During this period of time, the reports issued by the

Trust stated that Bancorp stock had a value of $55.00 per share.

37.    On January 30, 2009, the Reserve Bank and the OFR embarked upon a full scope

examination of Bancorp and Orion Bank, which was concluded with the issuance of detailed reports

("Reports of Examination") on April 15, 2009. These Reports of Examination identified additional

safety and soundness deficiencies at Bancorp and Orion Bank. During this period of time, the reports

issued by the Trust stated that Bancorp stock had a value of $32.00 per share.

38.   As of September 18, 2009, Orion Bank had not fully complied with the requirements set forth in the Written Agreement. Further, the additional safety and soundness deficiencies identified in the Reports of Examination remained largely unaddressed. Therefore, on September 18, 2009, citing these concerns, the Board of Governors of the Federal Reserve (the "Federal Reserve") and the OFR entered into an agreed Cease and Desist Order (the "Order") with Bancorp and Orion Bank. During this period of time, the reports issued by the Trust stated that Bancorp stock had a value of $32.00 per share.

39.   The Order required, among other things, that Bancorp and Orion Bank retain an independent consultant acceptable to the Federal Reserve and the OFR to conduct a review of the effectiveness of Bancorp's and Orion Bank's corporate governance and management structure and to prepare a report of findings and recommendations and to take steps to implement those recommendations within a set time table.

40.   On November 9, 2009, the Federal Reserve issued a Prompt Corrective Action Directive (the "Directive") to Orion Bank.

41.   The Directive found that Orion Back was critically undercapitalized.

42.   The Directive also ordered Orion Bank to dismiss Williams from office and as a member of the Board of Directors on the basis that Orion Bank, with Williams' active participation, had filed materially inaccurate regulatory reports, made false statements to the Federal Reserve, had suffered additional loan losses, and had failed to comply with provision of the Written Agreement designed to require that the Bank properly address its asset quality problems. In this regard, the Directive concluded that: "These actions show that the management of the Bank would be improved without

Williams' service as a senior executive officer or director of the Bank." During this period of time, the reports issued by the Trust stated that Bancorp stock had a value of $32.00 per share.

43.     On Friday, November 13, 2009, Orion Bank, Naples, Florida was closed by the Florida Office of Financial Regulation, and the Federal Deposit Insurance Corporation (FDIC) was named Receiver. No Advance notice is given to the public where a financial institution is closed. Thus, Plaintiffs learned of this through the press.

44.     Following the placement of Orion Bank onto receivership with the FDIC, the value of Bancorp stock, which constituted in excess of ninety percent of the assets to the Plan, dropped to zero.

45.     Each Defendant herein was, during the course of time relevant hereto, a fiduciary of the Plan.

46.     At all relevant times, the Defendants herein had knowledge of the downturn in the Florida economy, its impact on the financial soundness of Bancorp and Orion Bank, the examinations by regulatory authorities and the detailed deficiencies in resulting reports, and the regulatory requirements required by authorities.

47.     At all relevant times, the Defendants herein had knowledge of the impact that deficiencies at Bancorp and Orion Bank would have on the Plan's assets.

48.     Despite this knowledge, the Defendants herein had knowledge of the impact of deficiencies at Bancorp and Orion bank, failed to act in the interest of the Plan participants, failed to take prudent steps to protect the Plan's assets.

49.     Instead, Defendants issued statements touting an unrealistically high value for Bancorp stock, statements that were designed to encourage Plan participants to continue investing their contributions

Tamagni v. Orion Bancorp, Inc. Complaint
Page 14 of 24

to the Plan in Bancorp stock. Defendants also continued investing the company's matching contributions in Bancorp stock.

50.    At all relevant times, Plaintiff attempted to withdraw their retirement from the Plan in cash, in accordance with the terms and conditions governing the Plan.

51.    At all relevant times, the fiduciaries responsible for the Plan improperly and unlawfully refused to allow Plaintiffs to withdraw their retirement from the Plan

### III. ERISA'S FIDUCIARY PROVISIONS

52.    As fiduciaries of the Plan, the Defendants were required to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries of the Plan and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the Plan, ERISA § 404 (a) (1) (A), 29 U.S.C.§ 1104 (a) (1) (A).

53.    The Defendants were also required to discharge their duties with respect to the Plan with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. ERISA § 404 (a) (1) (B), 29 U.S.C. §1104 (a) (1) (B).

54.    The Defendants were further required to discharge their duties with respect to the Plan in accordance with the documents and instruments governing the Plan insofar as such documents and instruments were consistent with ERISA's other fiduciary provisions, ERISA § 404 (a) (1) (D), 29 U.S.C. § 1104 (a) (1) (D).

### IV. CAUSES OF ACTION

### COUNT ONE - BREACH OF DUTY OF LOYALTY

### All Defendants

55.    Plaintiffs restate and reallege paragraphs 1 to 54 as if set forth fully herein.

56.    The Defendants breached their duty of loyalty to the Plaintiffs, as mandated by ERISA § 404

(a) (1) (A), 29 U.S.C. § 1104 (a) (1) (A), in at least the following non-exhaustive particulars.

      a. by failing to advise Plaintiffs of known financial deficiencies in Bancorp and

Orion Bank as detailed herein; and

      b. by concealing from Plaintiffs known financial deficiencies in Bancorp and

Orion Bank as detailed herein; and

      c. by failing to take prudent and appropriate steps to protect the value of

Bancorp stock, the primary (nearly sole) Plan asset, by not correcting known

deficiencies in Bancorp and Orion Bank, despite their knowledge of the

deficiencies in Bancorp and Orion Bank that required correction as

detailed herein; and

      d. by continuing to invest Plan assets in Bancorp stock despite known

financial deficiencies in Bancorp and Orion Bank as detailed herein; and

      e. by failing to take any action to effectively monitor, review, analyze,

question, alter, slow, stop, or protect the Plan's investment in Bancorp stock

through employer Plan contributions despite known financial deficiencies as

Bancorp and Orion Bank as detailed herein; and

      f. by encouraging Plaintiffs to invest their employee Plan contributions in

Bancorp stock despite their knowledge of the deficiencies in Bancorp and

Orion Bank as detailed herein; and

g. by accepting Plaintiffs' employee Plan contributions to be invested in Bancorp stock despite their knowledge of the deficiencies in Bancorp and Orion Bank as detailed herein; and

h. by refusing to allow Plaintiffs to withdraw their Plan assets in accordance with the terms and conditions of the documents and instruments governing thePlan; and

i. by placing the best interests of Bancorp management ahead of the interest of the participants and beneficiaries of the Plan; and

j. by appointing Williams as a Trustee of the Plan while Williams was simultaneously the President, Chief Executive Officer, and Chairman of the Board of both Bancorp and Orion Bank, placing Williams in an irreconcilable conflict given his ERISA mandated duty of loyalty to the Plan participants; and

k. by appointing Meyers as a Trustee of the Plan while Meyers was

simultaneously serving on the Board of Bancorp, placing Meyers in a irreconcilable conflict given his ERISA mandated duty of loyalty to the Plan participants.

57.     Each of the Defendants knowingly participated in the failure of the other Defendants to discharge their duty of loyalty the Plaintiffs, enabled the other Defendants to breach their own duties to discharge their duty of loyalty to the Plaintiffs, and knew of the other Defendant's failure to discharge their duty of loyalty to the Plaintiffs and failed to make reasonable efforts under the

circumstances to remedy those breaches of duty. Accordingly, each of the Defendants is liable as a

co-fiduciary for the losses caused thereby. ERISA § 405(a) (1) – (3), 29 U.S.C. §§ 1105 (a) (1) – (3).

58.     Each of the Defendants has, through the acts and omissions recounted herein, caused losses

and damages to the Plaintiffs herein in an amount to be proven at trial, but which, exclusive of costs

and fees, exceeds the jurisdictional limits of this Court.

## COUNT TWO - BREACH OF DUTY TO ACT PRUDENTLY

### All Defendants

59.     Plaintiffs restate and reallege paragraphs 1 to 54 as if set forth fully herein.

60.     The Defendants breached their duty to exercise care, skill, prudence and diligence under the

circumstances then prevailing that a prudent person acting in a like capacity and familiar with such

matters would use in the conduct of an enterprise of a like character and with like aims, as mandated

by ERISA § 404 (a) (1) (B), 29 U.S.C. § 1104 (a) (1) (B), in at least the following non-exhaustive

particulars:

  a. by failing to advise Plaintiffs of known financial deficiencies in Bancorp and

Orion Bank as detailed herein; and

  b. by concealing from Plaintiffs known financial deficient in Bancorp and

Orion Bank as detailed herein; and

  c. by failing to take prudent and appropriate steps to protect the value of

Bancorp stock, the primary (nearly sole) Plan asset, by not correcting known

deficiencies in Bancorp and Orion Bank, despite their knowledge of the

deficiencies in Bancorp and Orion Bank that required correction as detailed

herein; and

d. by continuing to invest Plan assets in Bancorp stock despite known financial deficiencies in Bancorp and Orion Bank as detailed herein; and

e. by failing to take any action to effectively monitor, review, analyze, question, alter, slow, stop, or protect the Plan's investment in Bancorp stock through employer Plan contributions despite known financial deficiencies in Bancorp and Orion Bank as detailed herein; and

f. by encouraging Plaintiffs to invest their employee Plan contributions in Bancorp stock despite their knowledge of the deficiencies in Bancorp and Orion Bank as detailed herein; and

g. by accepting Plaintiffs' employee Plan contributions to be invested in Bancorp stock despite their knowledge of the deficiencies in Bancorp and Orion Bank as detailed herein; and

h. by refusing to allow Plaintiffs to withdraw their Plan assets in accordance with the terms and conditions of ERISA and the documents and instruments governing the Plan; and

i. by failing to take reasonable and prudent steps to ensure liquidity in the Plan so that Plaintiffs could withdraw their Plan assets in accordance with the terms and conditions of ERISA and the documents and instruments governing the Plan; and

j. by appointing Williams as a Trustee of the Plan while Williams was simultaneously the President, Chief Executive Officer, and Chairman of the Board of both Bancorp and Orion Bank, placing Williams in an irreconcilable

conflict given his ERISA mandated duty of loyalty to the Plan participants;

and

> k. by appointing Meyers as a Trustee of the Plan while Meyers was
> simultaneously serving on the Board of Bancorp, placing Meyers in a

irreconcilable conflict given his ERISA mandated duty of loyalty to the Plan

participants.

61.      Each of the Defendants knowingly participated in the failure of the other Defendants to

discharge their duty to act prudently, enabled the other Defendants to breach their own duties to act

prudently, and knew of the other Defendants' failure to discharge their duty of to act prudently and

failed to make reasonable efforts under the circumstances to remedy those breaches of duty.

Accordingly, each of the Defendants is liable as a co-fiduciary for the losses caused thereby. ERISA

§§ 405 (a) (1) – (3), 29 U.S.C. §§ 1105 (a) (1) – (3).

62.      Each of the Defendants has, through the acts and omissions recounted herein, caused losses

and damages to the Plaintiffs herein in an amount to be proven at trial, but which, exclusive of costs

and fees, exceeds the jurisdictional limits of this Court.

## COUNT THREE – BREACH OF DUTY TO ABIDE BY PLAN DOCUMENTS

### All Defendants

63.      Plaintiffs restate and reallege paragraph 1 to 54 as if set forth fully herein.

64.      The Defendants breached their duty to discharge their duties with respect to the Plan in

accordance with the documents and instruments governing the Plan insofar as such documents and

instrument were consistent with ERISA's other fiduciary provisions, as mandated by ERISA § 404 (a) (1) (D), 29 U.S.C. § 1104 (a) (1) (D), in at least the following non-exhaustive particulars:

a. by failing to advise Plaintiffs of known financial deficiencies in Bancorp and Orion Bank as detailed herein; and

b. by concealing from Plaintiffs known financial deficiencies in Bancorp and Orion Bank as detailed herein; and

c. by failing to take prudent and appropriate steps to protect the value of Bancorp stock, the primary (nearly sole) Plan asset, by not correcting known deficiencies in Bancorp and Orion Bank, despite their knowledge of the deficiencies in Bancorp and Orion Bank that required correction as detailed herein; and

d. by continuing to invest Plan assets in Bancorp stock despite known financial deficiencies in Bancorp and Orion Bank as detailed herein; and

e. by failing to take any action to effectively monitor, review, analyze, question, alter, slow, stop, or protect the Plan's investment in Bancorp stock through employer Plan contributions despite known financial deficiencies as Bancorp and Orion Bank as detailed herein; and

f. by encouraging Plaintiffs to invest their employee Plan contributions in Bancorp stock despite their knowledge of the deficiencies in Bancorp and Orion Bank as detailed herein; and

g. by accepting Plaintiffs' employee Plan contribution to be invested in Bancorp stock despite their knowledge of the deficiencies in Bancorp and Orion Bank as detailed herein; and

h. by refusing to allow Plaintiffs to withdraw their Plan assets in accordance with the terms

and conditions of ERISA and the documents and instruments governing the Plan; and

i. by failing to take reasonable and prudent steps to ensure liquidity in the Plan so that

Plaintiffs could withdraw their Plan assets in accordance with the terms and conditions of

ERISA and the documents and instruments governing the Plan; and

j. by appointing Williams as a Trustee of the Plan while Williams was simultaneously the

President, Chief Executive Officer, and Chairman of the Board of both Bancorp and Orion

Bank, placing Williams in an irreconcilable conflict given his ERISA mandated duty of

loyalty to the Plan participants; and

k. by appointing Meyers as a Trustee of the Plan while Meyers was

simultaneously serving on the Board of Bancorp, placing Meyers in a

irreconcilable conflict given his ERISA mandated duty of loyalty to the Plan

participants.

65.     Each of the Defendants knowingly participated in the failure of the other Defendants to

discharge their duties with respect to the Plan in accordance with the documents and instruments

governing the Plan, enabled the other Defendants to breach their own duties to discharge their duties

with respect to the Plan in accordance with the documents and instruments governing the Plan, and

knew of the other Defendants' failure to discharge their duties with respect to the Plan in accordance

with the documents and instruments governing the Plan and failed to make reasonable efforts under

the circumstances to remedy those breaches of duty. Accordingly, each of the Defendants is liable as

a co-fiduciary for the losses caused thereby. ERISA §§ 405 (a) (1) – (3), 29 U.S.C. §§ 1105 (a) (1) –

(3).

66.     Each of the Defendants has, through the acts and omissions recounted herein, caused losses and damages to the Plaintiffs herein in an amount to be proven at trial, but which, exclusive of costs and fees, exceeds the jurisdictional limits of this Court.

## COUNT FOUR – BREACH OF DUTY PRUDENTLY TO SELECT AND MONITOR THE TRUSTEE DEFENDANTS

### Bancorp and Board of Directors

67.     Plaintiffs restate and reallege paragraphs 1 to 54 as if set forth fully herein.

68.     Bancorp and its Board of Directors (Williams, Alan Pratt, Earl P. Holland, James W. Aultman, James J. Torok, David J. Sweeney, and Meyers (until his resignation during 2006) had the authority and responsibility to appoint and remove the Trustee Defendants as fiduciaries of the Plan and was obligated to monitor the Trustee Defendants in the performance of their duties. Bancorp and its Board of Directors selected and appointed Williams and Meyers as Trustees of the Plan at a time when both served on the Board of Directors of Bancorp, and at a time when Williams served as the President, Chief Executive Officer, and Chairman of the Board of Directors of both Orion Bank and Bancorp. This selection and appointment of William and Meyers was improper and imprudent in that it created an irreconcilable conflict of interest for Williams and Meyers between their duty to act solely in the interest of the Plan participants, as mandated by ERISA, and their duties to Orion Bank and Bancorp which conflicted with their duties as Trustees of the Plan. At no time did Bancorp or its Board of Directors prudently consider or review the performance of the Trustee Defendants relating to the Plan's investment in Bancorp stock, replace the Trustee Defendants with suitable independent fiduciaries, or take any other action calculated to ensure that the Trustee Defendants properly discharged their fiduciary duties, despite having knowledge of material adverse information which

they knew or should have known would cast grave doubt on the prudence  the Plan's holdings in

Bancorp stock.

69.    As a result of the foregoing imprudent acts and omissions, Bancorp caused a loss to the Plan

for which it is liable, and the members of the Board of Directors caused a loss to the Plan for which

they are personally liable. ERISA § 409 (a), 29 U.S.C. § 1109 (a).

70.    Bancorp and its Board of Directors each enabled the Trustee Defendants to breach their own

duties relating to the prudence of the Plan's investment in Bancorp stock, knew or should have

known of the Trustee Defendants' failure to take action regarding the Plan's investments in Bancorp

stock, and failed to make reasonable efforts under the circumstances to remedy those breaches of

duty. Accordingly, Bancorp and the members of its Board of Directors is each liable as a co-fiduciary

for the losses caused thereby. ERISA §§ 405 (a) (1) – (3), 29 U.S.C.§§1105 (a) (1) – (3).

71.    Each of the Defendants has, through the acts and omissions recounted herein, caused losses

and damages to the Plaintiffs herein in an amount to be proven at trial, but which, exclusive of costs

and fees, exceeds the jurisdictional limits of this Court.

    **WHEREFORE,** Plaintiffs pray that this Honorable Court, after due proceedings had, enter

an Order:

    1.    Holding each of the Defendants herein liable, jointly and severally, for the losses and

damages sustained by Plaintiffs herein, and requiring each of the Defendants to restore all

losses caused by the Defendants to the Plaintiffs as a result of their fiduciary breaches

recounted above; and

    2.    Holding each of the Defendants herein liable, jointly and severally, for the

losses and damages sustained by Plaintiffs herein, and requiring each of the

Defendants to forfeit their Plan accounts in order to offset all or part of any

judgment ordered against them herein; and

3.       Awarding Plaintiffs judicial interest, costs, and reasonable attorneys' fees as

may be just and proper under the circumstances; and

4.       Granting all other equitable and legal relief which may be just and proper

under  the circumstance.

                                    **/s/ Amy J. Winarski**
                                    Amy J. Winarski
                                    Bar Number 900140
                                    Attorney for Plaintiffs Walter Tamagni, et al
                                    Marcadis & Associates, P.A.
                                    5104 S Westshore Blvd.
                                    Tampa, FL  33611-5650
                                    Telephone: (813) 288-1881
                                    Fax: (813) 288-9678
                                    E-mail: awinarski@marcadislaw.com

                                    **/s/ Nathan D. Clark**
                                    Nathan D. Clark
                                    Bar Number 340561
                                    Attorney for Plaintiffs Walter Tamagni, et al
                                    Coral Reef Law Offices. P.A.
                                    18330 Franjo Road
                                    Palmetto Bay, FL  33157
                                    Telephone: (305) 255-7500
                                    Fax: (305) 255-7040
                                    E-mail: nclark@coralreeflaw.com